Filed Nov. 19, 1884.

---

No. 11,000.

## TEST ET AL. *v.* LARSH ET AL.

ATTORNEY AND CLIENT.—*Authority of Attorney to Bind Client by Receipt of Damages.—Ad Quod Damnum.*—Where a writ of *ad quod damnum* to condemn a water-right is resisted upon the ground that the same will injure a mill already in course of erection, and an order of condemnation is rendered conditioned upon the payment within a year of damages found to accrue to the defendant, the attorney of the defendant in the proceedings can not, by virtue of his general employment as such, bind his client by receiving such damages.

From the Wayne Circuit Court.

*W. D. Foulke, J. L. Rupe* and *C. H. Burchenal,* for appellants.
*W. A. Bickle* and *T. J. Study,* for appellees.

BLACK, C.—The appellants made application against the appellees and others for a writ of assessment of damages to assess the damages that would be occasioned to the defendants by the diversion of water from the Whitewater river for the purpose of using the water in propelling mill machinery upon the land of the plaintiffs, the lands of the defendants being on the opposite side of the stream.

The writ was granted, and the sheriff returned it and the inquest. Issues were formed between the appellants and the appellees, the other defendants not appearing. The trial re-

sulted in a finding in favor of the plaintiffs, and the court as-
sessed the damages of the defendants as they were assessed
by the sheriff's jury, the amount assessed as the damages of
the appellees being thirty dollars. The court thereupon, on
the 28th of May, 1869, rendered judgment, "that the said
plaintiffs do have and exercise the right to divert and use the
water of said stream in manner and form as prayed for in their
said petition, provided that they do, within one year from and
after this date, pay or tender to the said defendants respectively
the said several sums assessed in their favor as aforesaid."

The costs accrued prior to the filing of the answer of the
appellees were adjudged against the plaintiffs; those subse-
quently accrued were adjudged against the appellees. A mo-
tion for a new trial made by the appellees was overruled, and
they filed a bill of exceptions and prayed an appeal to the
Supreme Court, which was granted, the defendants being re-
quired to file their appeal bond within thirty days. An ap-
peal was brought, after the expiration of nearly three years
from the date of said judgment, which was reversed, the cause
being remanded for a new trial. *Larsh* v. *Test,* 48 Ind. 130.

On the return of the cause issues of law and issues of fact
were tried, and judgment was rendered for those defendants
who are the appellees. The plaintiffs appealed, and this judg-
ment was reversed. *Test* v. *Larsh,* 76 Ind. 452. This re-
versal was because of the error in sustaining a demurrer to
certain paragraphs of reply. On the return of the cause the
court below overruled said demurrer, and upon a trial by
jury the verdict was in favor of the appellees. Judgment
was rendered accordingly, from which this appeal is brought,
the action of the court in overruling a motion for a new trial
made by the appellants being presented for our consideration.

It will not be necessary to set out the pleadings, the state
of the record in this respect being fully shown in the opin-
ions rendered on said former appeals.

It will be seen by consulting the opinion rendered on the
first appeal, that the judgment was reversed on the ground

that the evidence did not sustain the finding, because the evidence showed, in support of an answer, that before the plaintiffs made application for the writ the appellees had commenced, on the opposite side of the stream, the construction of a mill, which would be injured by the diversion of water proposed by the plaintiffs; it being held that under the statute the writ of assessment of damages could not be made available to divert water from a watercourse to the injury of a mill already erected or in process of erection.

The evidence on the last trial showed such prior construction by the appellees of a mill which would be injured by granting the privilege of the writ to the appellants; and, under the law of this case, they could not succeed without proof of certain matter alleged by way of reply.

On the second appeal above mentioned, it was held that if, as alleged in reply, the appellants, within one year after said first judgment, paid, and the appellees accepted the amount assessed as their damages, the defence so shown by answer and proof would not avail the appellees, who by such voluntary acceptance of the damages assessed, with knowledge of the facts, would thereafter be precluded from controverting the rights, so adjudged to the plaintiffs in said original judgment, to divert the water of said stream. ·

It was proved on the last trial that, on the 20th of April, 1870, and therefore within one year from the rendition of the original judgment, the amount so assessed as the damages of the appellees was paid by one of the appellants to James Perry, who was attorney for the defendants originally in this proceeding. When this payment was made, Mr. Perry gave the appellants a receipt, signed by him as attorney for Leroy M. Larsh, one of the appellees, acknowledging the receipt from the appellants of $30, " the amount of damages assessed " in this proceeding to the appellees. There was evidence showing that, within a year from the rendition of the original judgment, the appellees were informed by Mr. Perry of this payment, and there was evidence tending to

prove that the appellees accepted the payment; but there was other evidence tending to prove, and which the jury treated as proving, that the appellees never accepted the payment, but, on being informed thereof by Mr. Perry, refused to accept the sum so paid or any part of it.

Mr. Perry having been told by the appellees that they would appeal the case, he got the record in shape for that purpose, as above stated; but he testified, and there was no showing to the contrary, that he never had anything to do with the case after the rendition of the judgment. There was evidence that before the making of such payment he informed one of the appellees that he would have nothing more to do with the case; that two or three months after the rendition of the original judgment, another of the appellees got the papers in the case from Mr. Perry, and told him that the appellees had employed Mr. Bickle to take the case to the Supreme Court, and that Mr. Perry then answered that he had long before resolved to have nothing more to do with the case; also, that in the summer or fall of 1869, the appellants requested the appellees to enter into an agreement in relation to the case, and the appellees refused to do so, and stated to the appellants that the former had appealed the case and had employed Mr. Bickle to take the case up to the Supreme Court.

After the 20th of April, 1870, the appellants proceeded to construct their mill, and they finished it in March 1872.

The appellants, who in their testimony denied that they were so informed that Mr. Bickle had been employed to take an appeal, contend that if they were so notified this would not constitute notice to them of the revocation of the authority of Mr. Perry as the attorney of the appellees in this proceeding, and that, the appeal not having been taken, and the appellants not having been notified that Mr. Perry's authority had terminated, the acceptance of payment by him was valid and binding as between the appellants and the appellees, though the latter refused to accept payment from Mr. Perry.

If no notice of revocation of the authority of Mr. Perry

was necessary, the verdict was sustained by the evidence, and the judgment should be affirmed, this question being the controlling one in the case.

The proceeding was conducted under article 41 of the code of 1852, section 683, *et seq.* Section 697 provided, as does section 896, R. S. 1881: "Any defendant may appear and traverse any material fact therein stated in the inquest, or he may plead or show any valid matter in bar of the right of the plaintiff to have the benefit of such writ; and issues of law and of fact may be made up and tried, and the court may adjudge costs therein, and proceedings had as in other actions."

Section 698, like section 897, R. S. 1881, provided: "The court may render judgment and issue execution for any amount of damages assessed by the jury against any such person owning or wishing to build any mill or mill dam in favor of the party entitled to damages, if desired by the party thus entitled."

Section 702, like section 901, R. S. 1881, provided: "The plaintiff shall not be invested with any rights under these proceedings until he pays or tenders the damages assessed; which must be done within one year after the assessment is confirmed, and not afterward."

Section 703, like section 902, R. S. 1881, provided: "Any assessment of damages confirmed by the court, and paid within a year after confirmation, shall bar a recovery for the same in any other action."

It was provided by section 772 of the code of 1852, as it is by section 968, R. S. 1881, that an attorney has authority, until discharged or superseded by another, "To receive money claimed by his client in an action or special proceeding, during the pendency thereof or afterward, and, upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment."

It will be observed by reference to the form of said original judgment, above quoted, that no judgment was rendered for the recovery absolutely of a sum by the appellees. If

they had not proposed to themselves to defeat the application, but had been content to accept damages, and had "desired" a judgment therefor on which execution could be issued, they might, under the statute, have had such a judgment. The amount assessed as their damages, the payment of which within the year was by the judgment made optional with the plaintiffs, could not be regarded as money claimed by the appellees in the proceeding, and was not money for the collection of which their attorney could take out execution. Mr. Perry was not at any time the attorney of the appellees for the purpose of collecting money from the appellants. The appellees occupied the position of resistance to the application of the appellants, who were seeking, and by the judgment obtained, the privilege of diverting the water and of paying the damages thereby occasioned. They stood, in respect to the payment of damages, in the position of plaintiffs; while the appellees occupied the relation thereto of defendants.

The general power of an attorney for the defendant ceases upon the entry of final judgment. *Hillegass* v. *Bender*, 78 Ind. 225.

As a matter of fact, Mr. Perry's relation as attorney for the appellees in this proceeding had ceased when he accepted payment from the appellants, who, while they knew that he had been attorney for the defendants in the proceeding, knew that final judgment had been rendered therein, that the appeal granted in term had not been perfected, that the sum paid him was not money claimed by his clients in the proceeding, or money which he had been employed to collect, and that, at the time of the payment, neither his clients nor he in their behalf, if he were still their attorney, could enforce such payment. They were bound to know that without some contract between Mr. Perry and the appellees other than a mere general employment of him as their attorney in the proceeding, without some relation other than that in which he had been held out to the appellants, he would have no authority to accept said payment in behalf of the appellees. The appel-

lants by said payment placed themselves in no better situation than they would have gained if they had known the true relation at that time between Mr. Perry and the appellees; in other words, the appellees were not bound to notify the appellants that Mr. Perry was no longer the attorney of the former in the proceeding.

Whether, if Mr. Perry had remained the attorney in the proceeding for the purpose of taking an appeal, the appellees, who had not manifested a desire to recover said damages by taking a judgment therefor, would be bound by his acceptance of payment, we need not decide.

As the appellants made the payment to a stranger, the appellees, having refused to accept the payment from him, were not bound to notify the appellants of such refusal; and when the appellants proceeded to construct their mill in reliance upon that payment merely, they did so at their own risk.

The judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at the costs of the appellants.

Filed Nov. 19, 1884.