Farmer L. BLACK, Jr., Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Feb. 4, 1972.

Certiorari Denied by Supreme Court
April 3, 1972.

Hugh W. Stanton, Jr., Asst. Public Defender, and Ross F. Houpt, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Jewett H. Miller, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

OPINION

JOHN D. TEMPLETON, Special Judge.

Farmer L. Black, Jr. was convicted of rape in the Criminal Court of Shelby County and sentenced to serve 30 years in the penitentiary. The sentence was ordered to run consecutive to a sentence imposed on him in Arkansas for the crime of kidnapping. On the trial and his motion for a new trial he had privately retained counsel but having been certified indigent his appeal in error was prosecuted by the Public Defender of Shelby County. We have considered all of the assignments of error and finding no merit in them affirm the judgment of the Trial Court.

Black's first three assignments of error are that there was no evidence to sustain the verdict, that the evidence preponderates in favor of his innocence and against his guilt, and that the verdict is contrary to the law and the evidence. The proof shows that the prosecuting witness was waiting for a bus at Poplar and Cleveland in Memphis on the evening of December 1, 1970 when the defendant, having put her in fear by violence and threats to take her life, forced her into an automobile and took her to a more secluded place in the city where he raped her. Afterwards he took her to the apartment house where she lived and she immediately reported the details of the crime to others. He was a stranger to her but her account of his physical appearance and conversation and of the car he was driving led unmistakably to his apprehension and identification. A scar on the right side of his neck and a mangled right ear set him apart from others. Her report checked out so remarkably well that no doubt of his identity could be entertained. He did not testify and relied on an alibi which the court and jury rejected. The assignments are overruled.

Part of the fourth assignment of error and all of the ninth complain that the defendant should have been granted a new trial on account of newly discovered evi-

dence. In the fourth assignment it is said that the State withheld a statement made by the victim to the police in which she told about the crime but failed to mention a gun. At the trial she testified the defendant claimed to have a gun although she saw none and threatened to kill her with it if she did not comply with his directions. In the ninth assignment it is said in effect that the State proved by a rebuttal witness that the defendant swore in a case in Arkansas that he left home on Sunday, March 1, 1970 when he in fact swore he left home March 2. Both matters were raised for the first time on the motion for a new trial.

■ The defendant sought to introduce some kind of writing when the motion for a new trial was heard purporting to be the victim's statement to the police but the Judge would not admit it because no affidavit had been filed showing ordinary diligence to obtain the evidence before trial. His ruling is in conformity with our practice. Ross v. State, 130 Tenn. 387, 170 S.W. 1026 (1914). It appears further that the defendant declined to authenticate the writing by the testimony of the officer taking it or otherwise; and even neglected to tender it for the record. If the statement actually was made and left out the matter of the gun it would be incomplete merely. Withholding it would not be the kind of suppression the federal courts proscribe.

■ The Judge went into the question raised in the ninth assignment and found that the State's rebuttal witness testified the defendant swore in Arkansas that he had a dispute with his wife March 1, 1970 and when he got home she and her children were absent; and that he spent the night there and left the next morning, March 2. Hence, there was no conflict for newly discovered evidence to resolve. The record here bears out the Judge's finding.

■ The fourth assignment further complains that during the State's proof the defendant was ordered to and did stand up before the jury, presenting a front and side view of himself which no doubt revealed the disfigurement referred to. He did not testify. Our courts will not compel a defendant to participate in an experiment in the presence of the jury or even compel him to elect to participate or not. Stokes v. State, 64 Tenn. 619 (1875). But it is generally held that his privilege against self incrimination is not infringed by requiring him to exhibit himself in court in the manner a person is commonly seen in public. 21 Am.Jur.2d, Criminal Law, Sec. 361. The general rule agrees with common sense because the defendant is in the courtroom anyway and the jury can see him. What may be an imperfect view of him at his table is turned into a better view in front of the jury. We think that where the prisoner is required to stand up before the jury and present front and side views of himself his constitutional right is not encroached upon. And this is true where a scar or blemish on his person, in this case a scarred right neck and disfigured right ear, has become an important element in his identification.

The fourth and ninth assignments of error, in their individual parts and collectively, are overruled. The tenth assignment of error observes generally that if the defendant had known about the newly discovered evidence and presented the witnesses at the trial he likely would have been acquitted and it is overruled.

■ The fifth, sixth and seventh assignments of error complain that three witnesses were allowed to relate what the victim told them about the crime. Upon being left at her apartment house by the defendant after the crime she reported the experience immediately to two female tenants there. She was separated from her husband at the time but called him and upon his arrival in about 45 minutes, related the details to him. This all occurred within the space of an hour or two after the offense was committed. It was not er-

ror for these witnesses to relate in court what she told them. King v. State, 210 Tenn. 150, 357 S.W.2d 42 (1962); Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963). The assignment is overruled.

■ The eighth assignment of error is the doctor should not have been allowed to testify because he could not give an opinion whether the victim had been raped. The doctor examined her three or four hours after the offense occurred and found no physical evidence of penetration except the presence of non motile male sperm. He was unable to give an opinion that she had been raped or had engaged in sexual intercourse near the time in question. He said that usually sperm cells remain motile eight to twelve hours after intercourse but can lose motility in three hours; and that menstrual flow causes loss of motility early. She was in a menstrual period. The fact that the doctor could not give an opinion about when intercourse occurred would go to the weight of his testimony, not its admissibility. The assignment is overruled.

It is complained that in examining witnesses the Attorney for the State got over to the jury that the defendant had at least been tried for a criminal offense in Arkansas and that, it is believed, the jury knew on this account he had been convicted for an offense there. The tactic is said to be unfair and prejudiced the defendant as shown by the thirty year sentence fixed by the jury. It is agreed the objection was not contained in the motion for a new trial filed by privately retained counsel.

■ The defendant's alibi was that he spent all of March 1, 1970 with his wife at her place of business and her home and left her the next afternoon, March 2, to go to Texas and seek employment; and that he had no dispute with her and she did not take her children and leave. The state countered with proof that he made statements and testified in court to the contrary in Arkansas. Although the jury reasonably could not have concluded from the record that he was convicted of an offense

in Arkansas it reasonably could have inferred he was tried for some unidentified offense there. But the inference arose out of proof of the circumstances under which the defendant's statements were uttered. A part of the proof clearly was admissible and a part might have been excluded if objected to. The State's rebuttal proof on the subject is regarded as a run of the mill presentation and no calculated design to inject inadmissible evidence into the hearing or deprive the defendant of a fair trial.

In any event the alert Trial Judge kept the inquiry about the Arkansas incident remarkably free of objectionable material that might prejudice the defendant. We think the jury's verdict is based on the gravity of the crime instead of the inference that the defendant had been tried elsewhere on some undisclosed offense.

All of the assignments of error are overruled and the judgment is affirmed.

GALBREATH and MITCHELL, JJ., concur.